UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:14-cr-52 |
| | ) | Judge Mattice |
| JAMES C. PITTMAN | ) | |

## PLEA AGREEMENT

The United States of America, through William C. Killian, United States Attorney for the Eastern District of Tennessee; Jeffrey H. Knox, Chief, Fraud Section, Criminal Division, U.S. Department of Justice; James T. Brooks, Assistant U.S. Attorney; Daniel P. Butler, Trial Attorney, Fraud Section (collectively "the United States"); the defendant, James C. Pittman, and the defendant's attorney, Ashley L. Ownby, have agreed upon the following:

1. The defendant will waive indictment and arraignment and plead guilty to an information charging the defendant with the following offense:

a) Count One: Defendant Pittman did commit conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).

The punishment for this offense is as follows: imprisonment for not more than 20 years, a fine of not more than $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer whichever is greater, up to 5 years of supervised release; any lawful restitution and forfeiture; and a $100 special assessment.

2. The defendant has read the information, discussed the charge and possible defenses with defense counsel, and understands the crime charged. The defendant is pleading guilty because the defendant is in fact guilty. In order to be guilty, the defendant agrees that each of the following elements of the crime must be proved beyond a reasonable doubt:

a) For the offense alleged in Count One, first, two or more people agreed to try to accomplish a common and unlawful plan to violate 18 U.S.C. § 1956; and, second, the defendant knew about the plan's unlawful purpose and willfully joined in it. For the substantive money laundering offense, a violation of 18 U.S.C. § 1956(a)(2)(B), first, that a co-defendant transported, transmitted, or transferred a monetary instrument or funds; second, that the co-defendant's transportation, transmission, or transfer was to a place in the United States from or through a place outside the United States; third, that the defendant knew that the monetary instrument or funds involved in the transportation, transmission, or transfer represented the proceeds of some form of unlawful activity, here, bribery of a public official; and, fourth, the defendant knew that the transportation, transmission, or transfer was designed in whole or in part to conceal or disguise the source or ownership of the proceeds of bribery of a public official.

3. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

James Pittman at all relevant times operated a landscaping business in Chattanooga, Tennessee, in the Eastern District of Tennessee, and the bank account for that business was in Chattanooga. Pittman was friends with an active member of the United States Army, "Co-conspirator #1." The two men met when both were stationed at Fort Campbell, Kentucky, with the U.S. Army, and remained friends after Pittman left the Army in or about September 2001. In or about October 2008, Co-conspirator #1, who was on leave from his then-duty station in the country of Afghanistan, told Pittman that he had some money from "kickbacks" he received

2

from his position with the Army in Afghanistan. Co-conspirator #1 asked Pittman to run the money through Pittman's landscaping business and then give back most of it to Co-conspirator #1. Pittman knew that the money was probably obtained illegally and that Co-conspirator #1 was asking him to launder the money. Pittman did as Co-conspirator #1 requested, and kept for himself 11 to 13 percent of the total money he received from Co-conspirator #1.

In late 2008 or the start of 2009, Pittman started receiving cash from Co-conspirator #1 in Afghanistan. The first package Pittman received by U.S. Mail contained a toy "Jingle Truck"[1] which had $10,000 cash secreted in the back of the truck. Pittman received a similar package every other month for about six months. The packages ranged up to $20,000 total and consisted of $50 and $100 bills. Pittman also received an additional $20,000 in cash from Co-conspirator #1's father, "Co-conspirator #2." Co-conspirator #2 sent a package to Pittman with a note saying it "was the loan you needed." Pittman had not asked Co-conspirator #2 for a loan.

Pittman stored the cash he received from Co-conspirator #1 and #2 inside a safe at his landscaping business. He began to make cash deposits along with other business receipts into the landscaping bank checking account. Pittman kept the cash deposits low so as not to trigger any banking requirements. Upon making the cash deposits, Pittman began to pay Co-conspirator #1 and #2 out of his landscaping business, as though they were his real employees, in order to get Co-conspirator #1's money back to him with the above-percentage retained by Pittman. These were not repayment of any loan. Toward the end of 2009, Pittman began to close down his landscaping business. Accordingly, he accelerated the rate and amount of payments to Co-conspirators #1 and #2 in order to return to Co-conspirator #1 his money.

---

[1] According to Wikipedia, the term "Jingle Truck" is U.S. military slang for a very distinctive, colorfully decorated truck or bus in Afghanistan and Pakistan. *See* http://en.wikipedia.org/wiki/Jingle_truck

3

In total, between approximately December 2, 2008, and December 18, 2009, Pittman made cash deposits into his landscaping business bank account of approximately $89,694. In approximately that same period, Pittman wrote checks from that account to Co-conspirators #1 and #2 of, respectively, approximately $48,868 and $18,349.

4. The defendant understands that by pleading guilty the defendant is giving up several rights, including:

    a) the right to be indicted by a grand jury for this crime;

    b) the right to plead not guilty;

    c) the right to a speedy and public trial by jury;

    d) the right to assistance of counsel at trial;

    e) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

    f) the right to confront and cross-examine witnesses against the defendant;

    g) the right to testify on one's own behalf, to present evidence in opposition to the charges and to compel the attendance of witnesses; and

    h) the right not to testify and to have that choice not used against the defendant.

5. The parties agree that the appropriate disposition of this case would be the following as to each count:

    a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

    b) The Court will impose special assessment fees as required by law; and

    c) The Court may order forfeiture as applicable and restitution as appropriate.

4

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a).

6. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, that the Court decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make statements that are inconsistent with accepting responsibility for the defendant's offense, including violations of conditions of release or the commission of additional offenses prior to sentencing, the United States will be free not to make such motion or to withdraw such motion if already made, and will be free to recommend to the Court that the defendant not receive any offense level reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

7. The defendant agrees to pay the special assessment in this case prior to sentencing.

8. The defendant agrees, pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(a)(1), to forfeit and give to the United States prior to the date of sentencing any right, title, and interest which the defendant may have in assets constituting or derived from proceeds which he has that the defendant obtained directly or indirectly as a result of the violation to which he is pleading guilty and/or any property, real or personal, involved in the conspiracy to commit money laundering. The defendant further agrees not to contest the administrative, civil, or criminal forfeiture of any such asset(s). These assets include, but are not limited to, any assets charged in the Information filed by the United States. The defendant agrees that any asset charged in the Information is forfeitable as proceeds of the illegal activity for which he is pleading guilty. With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenges in any manner (including direct appeal, collateral challenges of any type, habeas corpus motions or petition, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution. Specifically, the defendant consents to the entry of a money judgment against him in the amount of $89,694 representing a sum of money constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the offense of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).

9. The defendant agrees that the Court shall order restitution, pursuant to any applicable provision of law, for any loss caused to: (1) the victims of any offense charged in this case (including dismissed counts); and (2) the victims of any criminal activity that was part of the same course of conduct or common scheme or plan as the defendant's charged offense.

10. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

11. In consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offenses committed,

a) the defendant agrees not to file a direct appeal of the defendant's conviction or sentence except the defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the district court; and

b) the defendant knowingly and voluntarily waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack the defendant's conviction and/or resulting sentence. The parties agree that the defendant retains the right to raise, by way of collateral review under § 2255, claims of ineffective assistance of counsel or prosecutorial misconduct not known to the defendant by the time of the entry of judgment.

12. This agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this agreement in any way by violating any court order or any local, state or federal law pending the resolution of this case, then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant

8

expressly waives any statute of limitations defense and any constitutional or statutory speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea in this case.

13. The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. If additional terms are included in the Supplement, they are hereby fully incorporated herein.

14. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge, and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

WILLIAM C. KILLIAN
United States Attorney

JEFFREY H. KNOX
Chief, Fraud Section, Criminal Division
U.S. Department of Justice

5-7-14
Date

By: _____
James T. Brooks
Assistant United States Attorney

4-30-14
Date

By: _____
Daniel P. Butler
Trial Attorney, Fraud Section

9

| 1-14-14 Alo | By: *[signature]* |
| Date | James C. Pittman |
| | Defendant |
| 1-14-14 Alo | By: *[signature]* |
| Date | Ashley L. Ownby |
| | Attorney for Defendant |

10

Case 1:14-cr-00052-HSM-WBC   Document 2   Filed 05/07/14   Page 10 of 10   PageID #: 15